# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| rePLANET HOLDINGS, INC., a Delaware Corporation,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana Corporation; and DOES 1-10,<br><br>Defendants. | Case No. 1:19-cv-00133-LJO-EPG<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND DENYING DEFENDANT'S REQUEST TO BIFURCATE TRIAL WITHOUT PREJUDICE<br><br>(ECF No. 12) |

Plaintiff rePlanet Holdings, Inc. ("Plaintiff") brings this suit against Defendant Federal Insurance Company ("Defendant") alleging causes of action under California law for breach of contract and breach of the covenant of good faith and fair dealing stemming from Defendant's refusal to pay insurance proceeds on Plaintiff's first-party insurance claims. Plaintiff now wishes to amend its Complaint to add factual allegations that Defendant systemically denies similar insurance claims and to allege a cause of action for fraud. For the reasons that follow, Plaintiff's motion to amend (ECF No. 12) is GRANTED and Defendant's request to bifurcate trial is DENIED WITHOUT PREJUDICE.[1]

---

[1] Because the Court is allowing the amendment to proceed, the motion to amend is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1). *See Cazares v. Morris*, 2011 WL 2414543 at *2 (D. Ariz. June 16, 2011) (citing, *inter alia*, *JJCO, Inc. v. Isuzu Motors America, Inc*., 2009 WL 3818247, at *2 (D. Haw. Nov. 12, 2009) (magistrate judge's denial of a motion for leave to amend is not a dispositive ruling)) (citing, in

1

## I. BACKGROUND

According to Plaintiff's Complaint, Plaintiff is a recycling company that allows customers to exchange their recyclables for vouchers. (ECF No. 1-2 ¶2-4.) The vouchers can then be used as if they were cash at participating grocery stores. (*Id.* at ¶7.) In July 2017, Plaintiff asserts that it discovered it had reimbursed grocery stores for recycling vouchers even though it did not receive the recyclables corresponding to the vouchers. (*Id.* at ¶24.) Plaintiff asserts that, unbeknownst to it, third parties forged counterfeit rePlanet vouchers using computer software and computers and entered the forged vouchers into commerce. (*Id.* at ¶12-17.) Plaintiff further alleges that one of its employees, Herman Granillo, stole printers on which rePlanet vouchers were created, the proprietary paper used to create the vouchers, and the computer equipment used to create the vouchers. (*Id.* at ¶18-25.) Granillo then used this stolen equipment to create vouchers not backed by any recyclables remitted. (*Id.*) Plaintiff claims that it lost millions of dollars because of these schemes.

Plaintiff maintains that it purchased a crime insurance policy from Defendant for the relevant time, which covered its losses. The policy defines "Securities"[2] as "any negotiable and non-negotiable instruments representing either money or property, including revenue and other stamps in current use, casino chips, tokens and tickets, provided that 'Securities' shall not include money." (*Id.* at ¶34.) The policy defines "Financial Instruments" to mean "checks, drafts, or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon an Organization or by anyone acting as an Organization's agent, or that are purported to have been so made or drawn." (*Id.* at ¶38.) Plaintiff maintains that the unauthorized vouchers are "Securities" and "Financial Instruments" under the policy.

///

---

turn, *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1102 n. 1 (9th Cir. 1985), *superseded by statute on other grounds as recognized in Simpson v, Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996) (noting that the plaintiff's motion for leave to amend its Complaint was properly treated as a nondispositive motion when the magistrate judge granted the plaintiff's motion)). A motion to bifurcate is nondispositive as well. *See Matsuura v. E.I. du Pont Nemours and Company*, 2006 WL 8463639 at *2 (D. Haw. Oct. 25, 2006) (treating a motion to bifurcate trial as nondispositive).

[2] Defined terms are indicated by capitalization of the first letter of the term and quotation marks.

The "Employee Theft Coverage" purports to cover the "direct loss"[3] of "Securities" resulting from "Theft" or "forgery committed by an 'Employee' acting alone or in collusion with others." (*Id.* at ¶33.) As it relates to "Employee Theft Coverage," the policy defines the term "Theft" to mean "the unlawful taking of 'Money,' 'Securities,' or 'Property' to the deprivation of: an 'Insured.'" (*Id.* at ¶35.) The policy defines the term "Forgery" to mean "the signing of another natural person's name with the intent to deceive, but it does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures." (*Id.* at ¶36.)

The "Forgery Coverage" protects against "direct loss" sustained by an "Insured" resulting from "Forgery" or alteration of a "Financial Instrument" committed by a "Third Party." (*Id.* at ¶37.) A "Third Party" means a "natural person other than: (A) an 'Employee;' or (B) a natural person acting in collusion with an "Employee.'" (*Id.* at ¶39.)

The "Computer Fraud Coverage" purports to provide protection for "direct loss" of "Money," "Securities" or "Property" sustained by an "Insured" resulting from "Computer Fraud" committed by a "Third Party." (*Id.* at ¶40.) "Computer Fraud" is defined as "the unlawful taking of 'Money,' 'Securities,' or 'Property' resulting from a 'Computer Violation.'" (*Id.* at ¶41.) "Computer Violation" means "an unauthorized: (A) entry into or deletion of 'Data' from a 'Computer System;' (B) change to 'Data' elements or program logic of a 'Computer System,' which is kept in machine readable format; or (C) introduction of instructions, programmatic or otherwise, which propagate themselves through a 'Computer System,' directed solely against an 'Organization.'" (*Id.* at ¶42.)

Plaintiff alleges that the "Employee Theft," "Forgery," and "Computer Fraud" coverages apply to cover Plaintiff's losses. Defendant, however, denied Plaintiff's claim, finding that it did not suffer a "direct loss" as Defendant interpreted that term. Instead, Plaintiff only suffered financial loss after the unauthorized vouchers were "cashed in."

///

---

[3] The policy does not define "direct loss."

Plaintiff originally filed this suit based on the above allegations on December 31, 2018, alleging causes of action for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. (ECF No. 1.) The Court issued a Scheduling Conference Order on April 3, 2019, providing that "[a]ny amendment to the pleadings should be filed by May 1, 2019." (ECF No. 9.)

Plaintiff filed the instant motion on May 1, 2019. (ECF No. 12.) Plaintiff seeks to amend the Complaint in two ways. First, Plaintiff seeks to add an allegation that Defendant systemically denies all first-party claims under the pertinent crime insurance policy based on its interpretation of the "direct loss" language in its policies.

Second, the proposed Amended Complaint seeks to add a third cause of action for fraud. Plaintiff contends that Defendant's policy is illusory: "while the [p]olicy expressly covers employee theft of securities and forgery of financial instruments, [Defendant] has denied coverage on grounds that, inter alia, [Plaintiff] did not suffer a 'direct loss' as [Defendant] interpreted that phrase in the [p]olicy because [Plaintiff's] loss arose when the securities and financial instruments at issue were cashed in." (*Id.* at p. 2.) Plaintiff further alleges that it reasonably relied on the policy and Defendant's issuance of it as a purportedly valid crime and fidelity policy; but, because of the manner in which Defendant drafted the policy, and because of the interpretation Defendant gives to the phrase "direct loss," in reality, the policy provides no coverage for lost or stolen "Securities" under the "Employee Theft" or "Computer Fraud" coverages. Nor does it provide coverage under the "Forgery Coverage" for the "Forgery" of "Financial Instruments." (ECF 12-3 at ¶95.) Defendant issued the illusory policy, Plaintiff claims, with fraudulent intent.

Defendant filed an opposition to Plaintiff's motion to amend on May 16, 2019. (ECF No. 14.) Plaintiff filed a reply in further support of the motion on May 24, 2019. (ECF No. 16.) The Court heard oral argument on May 31, 2019. The Court asked the parties for additional citations to authority allowing or prohibiting similar fraud claims to the one Plaintiff seeks to advance here. The parties filed that supplemental briefing on June 7, 2019. (ECF Nos. 18, 19.)

///

///

## I. LEGAL STANDARDS

### a. Motions to Amend Generally

Because Plaintiff filed its motion for leave to amend within the time limits set forth in the Scheduling Order, the Court analyzes the request under Federal Rule of Civil Procedure 15(a). Rule 15(a)(2) permits a party to amend its pleading with the court's leave, advising that "[t]he court should freely give leave when justice so requires." The Court has discretion to grant or deny a request to amend but must provide justification when it denies a request. *Forman v. Davis*, 371 U.S. 178, 182 (1962). In ruling on a motion for leave to amend, courts consider: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "Absent prejudice, or a strong showing of any of the remaining…factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Futility alone can justify denying leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (upholding refusal to treat motion for reconsideration as motion to amend because amendment would be futile). The legal standard for assessing futility on this motion is identical to that of a motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), overruled on other ground by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id.* at 214. And "[d]enial of leave to amend on this ground is rare. Ordinarily, courts will defer consideration of [futility] challenges…until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *Green Valley Corp. v. Caldo Oil Co.*, 2011 WL 1465883 at *6 (N.D. Cal. April 18, 2011) (noting "the general preference against denying a motion for leave to amend based on futility"); *Fair Housing Council of Cent. California, Inc. v. Nunez,* at *4 (E.D. Cal. Jan. 24, 2012) ("[D]enial of leave to amend due to futility is rare…courts will defer consideration…until after…the amended pleading is filed."); *Lillis v. Apria Healthcare*, 2012 WL 4760908 at *1 (S.D. Cal. Oct. 5, 2012) (same).

The party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

### b. Fraud Under California Law

"Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess v. Ciba-Geigy Corp.*, USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (further citations omitted). "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 53 Cal.Rptr.2d 336, 351 (Cal. App. 1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Id.* at 336. "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr. 355, 358 (Cal. App. 1986) (citation omitted).

## II. ANALYSIS

### 1. *Whether the Proposed Amendment is Brought in Bad Faith*

One of the proposed amendments is an allegation—made upon information and belief—that Defendant systemically denies crime insurance claims based on its interpretation of "direct loss." Defendant maintains that such allegations lack any factual underpinning and are therefore brought in bad faith. The Court disagrees.

"[F]or allegations based upon 'information and belief' to be facially plausible, the allegations must be based on facts 'peculiarly within the possession and control of the defendant,' or 'on a belief supported by factual information that makes the inference of culpability plausible.'" *Barakezyan v. BMW of North America, LLC*, 2016 WL 2840803 at *3 (C.D. Cal. Apr. 7, 2016) (citations omitted). Here, it is plausible that Defendant interprets "direct loss" uniformly across all its crime insurance policies. Thus, there would never be coverage when an insured claims direct loss of "Securities," or money due to "Forged" "Financial Instruments," resulting in

systemic denial of such claims. Accordingly, Plaintiff's allegations of systemic conduct are plausible and not indicative of bad faith.[4]

Nor is the Court convinced that adding allegations that might lead to additional discovery burdens on the parties and the Court amounts to bad faith, at least at this early stage of the proceeding. *See, e.g., Brinkley v. Monterey Fin. Servs., Inc.*, 2018 WL 2128418 at *5 (S.D. Cal. May 9, 2018) ("Any time and expense that Defendants may have to spend responding to additional discovery necessitated by the proposed amendment to the Class Period does not support denying the Motion to Amend."); *Knight v. Curry Health Dist.*, 2016 WL 5719686, at *2 (D. Or. Sept. 29, 2016) ("The fact that amending might require Defendant to conduct additional depositions, beyond those anticipated, or might necessitate additional written discovery to and from additional parties, does not constitute undue prejudice, warranting denial of Plaintiff's amendment."); *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) ("Defendant asserts that the addition of the amendments in issue would require it to depose numerous witnesses across the country who have been previously questioned and would necessitate additional document searches and written discovery. Defendant further argues that additional discovery will postpone the trial date. Such delays do not constitute undue prejudice to the defendant.").

Any argument about the extent of additional discovery that the proposed amendments will necessitate, including disputes about third-party claim information, are more appropriately examined under the relevancy and proportionality requirements of Federal Rule of Civil Procedure 26 in the course of discovery. The Court finds that Defendant has not met its burden to show that Plaintiff seeks to amend in bad faith.[5]

///

---

[4] Nor do these allegations violate Federal Rule of Civil Procedure 11, which, in pertinent part mandates that factual contentions have sufficient evidentiary support, or, if specifically so identified, are reasonably based on belief or lack of information. *See* Fed. R. Civ. Pro. 11(b)(4). Again, the Court finds the factual allegations are plausible.

[5] To the extent there is any uncertainty, the onus is on Defendant to prove the amendment is sought in bad faith. *See DCD Programs, Ltd.*, 833 F.2d at 187.

### 2. *Whether Potential Delay Justifies Denying Leave to Amend*

Noting that non-expert discovery in this case is presently slated to close on January 17, 2020, and that trial is currently set for November 10, 2020, Defendant contends that allowing the amendments will delay the proceedings and necessitate changes to the current scheduling order. This is especially the case, Defendant maintains, because "potential discovery relating to other claims would require significant time to protect the rights of Federal's insureds." (ECF No. 14 p. 5.) Defendant asserts that, because of Plaintiff's allegations of systemic conduct, the amendment will create a "circus where the parties are required to litigate the facts and issues in unrelated claims." (*Id.* at p. 7.)

However, as explained above, where Plaintiff has not unduly delayed in seeking the amendment, that the amendment might delay the proceedings is not enough to justify its denial. *See DCD Programs, LTD*, 833 F.2d at 187. Moreover, the parties still have seven months before non-expert discovery closes, even without an extension of time.

And Defendant's referenced cases about the protection afforded to third-party claims files under California law do not persuade here, either. *See Colonial Life & Accident Ins. Co. v. Sup. Ct.*, 647 P.2d 86 (Cal. 1982) (affirming trial court order that prevented the disclosure of "other claims files" without the express written consent of the other insured); *Mead Reinsurance Co. v. Sup. Ct.*, 232 Cal.Rptr. 752, 757 (Cal. App. 1986) (same). Those cases do not address the propriety of a motion to amend. Again, the Court finds that potentially burdensome discovery does not justify prohibiting an otherwise valid amendment here.[6]

### 3. *Whether Potential Prejudice to Defendant Justifies Denying Leave to Amend.*

Defendant next contends that the proposed amendment will prejudice it because it will incur substantial litigation costs if it is required to search for, locate, review, and produce other claims files. Defendant also adds that the potential production of other claims files is prejudicial to the rights of its other insureds. But, again, that the proposed amendment might result in additional discovery obligations does not justify denial. Defendant has not shown it is unduly

---

[6] The Court is not making a ruling regarding the appropriate scope of discovery at this time. Discovery disputes shall be resolved using the Court's procedures as set forth in the scheduling order. (ECF No. 9.)

prejudiced by the delay in filing the amendment, which is the relevant inquiry here. Defendant's arguments are better geared towards a motion to limit discovery on relevancy, proportionality, and perhaps privilege grounds, than a motion to prevent amendment. And while Defendant will suffer some prejudice because of the amendment, this is true in every case when a motion for leave to amend is granted. Defendant has not shown the kind of undue prejudice necessary to justify denying a motion for leave to amend. *See SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F.Supp.2d 1081, 1094 (S.D. Cal. 2002) ("Where a party opposes a motion for leave to amend on the basis of undue prejudice, the showing of prejudice must be substantial.").

### *4. Whether the Fraud Claim is Futile*

Finally, Defendant argues that Plaintiff's motion to amend should be denied because Plaintiff's fraud claim is futile. The Court disagrees. As the Court understands it, Plaintiff's fraud claim relies on a tacit representation any insurer makes about an insurance policy: that the policy covers *something*. But here, Plaintiff claims Defendant's interpretation of "direct loss" precludes the possibility of insurance coverage for the loss of "Securities" and/or monetary loss due to the "Forgery" of "Financial Instruments." The policy, according to Plaintiff, is illusory and was issued with intent to defraud because under Defendant's interpretation of "direct loss," this part of the policy would not cover anything at all.

Following the hearing on this motion, the Court asked the parties for citation to authorities either allowing or prohibiting fraud claims premised upon the terms of an illusory insurance policy itself. Defendants pointed the Court to ten cases, but none of them address the type of fraud claim at issue here.

The first five cases Defendants cite analyze illusory coverage arguments in the context of a breach of contract or breach of the covenant of good faith and fair dealing claim.[7] These cases do not address whether a fraud claim is viable in the context of an allegedly illusory policy.

///

---

[7] These cases are *Scottsdale Ins. Co. v. Essex Ins. Co.*, 119 Ca.Rptr.2d 62 (Cal. App. 2002); *Fremont Reorganizing Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2012 U.S. Dist. LEXIS 195857, *7-8 and 35-36 (C.D. Cal. Jan. 5, 2012); *Jeff Tracy, Inc. v. US Specialty Ins. Co*., 636 F.Supp.2d 995, 1007 (C.D. Cal. 2009); *Blackhawk Corp. v. Gotham Ins. Co*., 63 Cal.Rptr.2d 413 (Cal. App. 1997); *Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co*., 221 Cal.Rptr.3d 711 (Cal. App. 2017).

9

Defendants next cite five cases that discuss fraud in the insurance policy context, but these cases are distinguishable from the instant case and do not foreclose Plaintiff's fraud claim here.

In *Behnke v. State Farm General Ins. Co.*, 127 Cal.Rpt.3d 372 (Cal. App. 2011), the court upheld a general demurrer as to the plaintiff's fraud claim. The claim was premised upon alleged representations that the defendant/insurer would pay the attorneys' fees of the plaintiff/insured when the plaintiff/insured insisted on retaining his own, independent counsel. The court held that the dispute centered upon an ordinary attorney fee dispute; there were no alleged actionable misrepresentations of fact.

*Spindle v. Chubb/Pacific Indemnity Group*, 152 Cal.Rptr. 776 (Cal. App. 1979) arose from a medical malpractice suit involving two doctors. The defendant/insurer allegedly told the plaintiff/insured that there was no conflict of interest between the two doctors, thus justifying a more economical arrangement of the doctors sharing counsel. Plaintiff averred that the defendant/insurer's representation that there was no conflict of interest was untrue and fraudulent. The Court ultimately sustained Defendant's demurrer, finding that the defendant/insurer's comment regarding the lack of a conflict was accurate.

In *Monroe v. Geico Insurance Company*, 2018 WL 500260 (N.D. Cal. Jan. 19, 2018), the plaintiff/insured claimed that his car was stolen. The defendant/insurer denied the claim because it could not obtain the plaintiff/insured's old phone records, which it needed for its investigation. The plaintiff/insured alleged that the defendant/insurer never intended to pay legitimate auto insurance claims; rather, it had a business practice of denying all claims based upon the pretense of the insured's cell phone records being unavailable. The Court granted the defendant/insurer's motion for summary judgment, as the undisputed evidence showed the plaintiff/insured chose to purchase the insurance policy because of its price and nothing more, and because the plaintiff/insured did not offer any evidence to show that at the time he purchased the policy, the defendant/insurer intended to deny legitimate claims for auto theft.

Defendant also cites *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 2011 WL 4501945 (C.D. Cal. Sept. 28, 2011)—another case decided at the summary judgment stage. The plaintiff/insured suffered extensive property damage due to Hurricane Katrina. The

defendant/insurer denied coverage based on the unambiguous terms of the policy, which precluded damage due to water damage. The plaintiff/insured maintained that the defendant/insurer made fraudulent extracontractual promises that it would cover damage due to "named windstorms." The court rejected that argument and awarded summary judgment to the defendant/insured because it did not find any extracontractual promises to cover damages due to "named windstorms."

Finally, defendant cites *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 352 (Cal. 2004). This case addressed whether the economic loss rule barred a manufacturer's fraud and intentional misrepresentation claims based on the supplier's provision of a false certificate of conformance. Though having nothing to do with fraud in the insurance context, Defendant appears to cite it for the general proposition that "conduct amounting to breach of contract only becomes tortious when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999).

The Court finds these cases inapposite. First, all the cases Defendant cites addressed extracontractual promises or, in the *Monroe* case, alleged business practices. These courts did not consider whether an insurance policy that is rendered illusory because of the insurer's interpretation of its terms can sustain a fraud claim. Second, *Monroe* and *Northrup Grumman Corp.* arose in the summary judgment context. The issue here is whether Plaintiff's proposed amended complaint could possibly state a claim for fraud—not whether any disputed factual issues exist.

Finally, the principle the court set forth in *Robinson*—that a breach of contract only becomes tortious when it violates a duty independent from contract law—is not violated by the proposed amendment. The *Robinson* principle, also characterized as the "economic loss rule," seeks to prevent a party from recasting breach of contract allegations as torts. *See JMP Securities LLP v. Altair Nanotechnologie Inc.*, 880 F.Supp.2d 1029, 1042-43 (N.D. Cal. 2012) (discussing purpose of the economic loss rule). The purpose of the rule is to "prevent the law of contract and the law of tort from dissolving into each other." *Robinson Helicopter*, 102 P.3d at 268.

///

The proposed allegations of fraud do not violate the economic loss rule here: Plaintiff's allegations go beyond a simple accusation that Defendant breached the insurance contract by not providing coverage; they allege instead that Defendant issued an illusory policy with intent to deceive. In other words, Plaintiff is not seeking to simply "recast" its breach of contract allegation into a fraud claim, as the fraud claim does not depend upon whether a breach of contract occurred. Even if Defendant did not breach the contract, its conduct could still amount to fraud if it issued a policy without the intention of providing any coverage and did so with the requisite fraudulent intent.

Defendant also argues the principle that a fraud claim must concern "past or existing material facts." (ECF 14 p. 8.) Defendant maintains that Plaintiff cannot meet that standard here because its fraud claim is premised on the denial of an insurance claim that was made seven months after Defendant issued the policy. But this argument misrepresents Plaintiff's claim. Plaintiff contends that Defendant misrepresented that, *at the time it issued the policy*, its policy provided some coverage as to the loss of "Securities" or monetary loss resulting from "Forgery" of "Financial Instruments."

Defendant further insists that multiple courts—both at the state and federal level—have interpreted "direct loss" in the same way that Defendant interprets it. Even assuming this is accurate, it does not render the proposed amendment futile. That these cases have defined "direct loss" consistently with Defendant could conceivably undercut Plaintiff's reasonable reliance on the tacit representation that the policy provides value, but it does not render Plaintiff's claim futile, assuming the truth of Plaintiff's allegations in its Complaint. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 186, n. 19 (2d. Cir. 2015) (noting that reasonableness is not appropriately considered at the pleading stage). No case that Defendant references, whether in its original or supplemental brief, specifically addresses whether an insurance policy that is rendered illusory given the insurer's interpretation of its terms can sustain a fraud claim.

That said, the cases Plaintiff references are not directly on-point either. For example, *Villalpando v. Transguard Insurance Company of America*, 17 F.Supp.3d 969, 980-81 (N.D. Cal.

2014) found that the plaintiff stated a fraud claim where he alleged the insurer "sold policies knowing that Plaintiff and others would pay premiums on insurance plans that Defendants were aware would not pay certain benefits." *Id.* The plaintiff in *Villalpando* sought disability benefits when injured on the job. He claimed the defendant/insurer told him that he was purchasing workers compensation insurance that would apply if he was injured on the job. This was, however, inaccurate. The defendant/insurer sold a policy that would only provide continuing coverage to the plaintiff/insured if the plaintiff/insured could obtain Social Security benefits—a condition the plaintiff/insured alleged the defendant/insurer knew he could not meet given his status as a non-citizen. While some language in *Villalpando* indicates a similarity to the instant matter, the fraud claim in that case was based on extracontractual assurances of coverage the defendant made to the plaintiff, not the issuance of the policy itself. *Villalpando* did not address a situation where the alleged fraud stems from the issuance of an allegedly illusory policy.

Unable to find California authority directly on point, the Court has considered cases in other jurisdictions. For example, in *Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 91 Ill.Dec. 628, 482 N.E.2d 1263 (1985), the Supreme Court of Illinois addressed a similar claim. The plaintiffs purchased underinsured motorist insurance from the defendant. However, the plaintiffs maintained that the insurance policy had no value because of how an Illinois statue defined "underinsured." The court found that, by issuing a policy and accepting premiums, an insurance company makes a tacit representation that the policy has some value. Because the policy as written, when combined with the Illinois definition of "underinsured," could never provide coverage, the court found the insurance company misrepresented that the policy had value and that this was sufficient to state a fraud claim:

> Here, the plaintiffs allege not that they were overcharged for something that had some value, but rather that they were charged premiums for coverage that had no value. We are of the opinion that the issuance of coverage by an insurance company in return for a premium is a tacit representation to the consumer that the coverage has value assuming for purposes of a motion to dismiss that plaintiff's allegations that the coverage has no value are true, we find that the insurance company defendants have made a false representation as to the value of the coverage by issuing it without disclosing that it had no value.

13

*Id.* at 250.

The Court finds the reasoning in *Glazewski* persuasive. By issuing the crime insurance policy that purportedly covered the loss of "Securities" and money due to the "Forgery" of "Financial Instruments," Defendant allegedly made a tacit representation that the policy provided some value in those areas. But Plaintiff alleges that this tacit representation was false. Because Plaintiff alleges that Defendant perpetuated this misrepresentation with the requisite fraudulent intent, the Court finds that the proposed amended complaint meets the 12(b)(6) threshold and is not futile.

The well-recognized principle that leave to amend should be liberally granted also informs the Court's decision. *See Eminence Capital, LLC*, 316 F.3d at 1051 (noting that the policy that leave to amend should be freely granted when justice so requires should be applied with "extreme liberality"). Indeed, the Ninth Circuit has instructed that a motion for leave to amend should rarely be denied because of alleged futility. *Lillis*, 2012 WL 4760908 at *1. This case does not present the unique circumstances necessary to justify denying the amendment for futility.[8]

### *5. Bifurcation under Federal Rule of Civil Procedure 42*

In the alternative, Defendant argues that the Court should defer trial on Plaintiff's tort claims until after the parties complete discovery and trial on the breach of contract claim. Defendant insists that separate trials would minizine the expenditure of judicial resources necessary to resolve potential discovery disputes relating to the fraud cause of action and could also prevent a needless trial on the tort claims if Defendant prevails on the breach of contract claims. *See Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 639 (Cal. App. 1995) (explaining that an insured may not maintain an action for breach of the implied covenant of good faith and fair dealing if there is no coverage for the claim). In response, Plaintiff argues that the motion is not properly before the Court, and, if it is, bifurcation is improper because the fraud and breach of contract claims are factually intertwined, and it would make little sense to try the same issues in separate cases.

---

[8] The Court also notes that this is Plaintiff's first request for leave to amend its Complaint, which is another factor courts consider when analyzing a request for leave to amend. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (listing previous amendments as a factor to consider in analyzing motions for leave to amend).

14

Rule 42 provides in pertinent part that:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42.

Courts may consider several factors in determining whether bifurcation is appropriate, including whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties. *See Hirts v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).

The Court finds the bifurcation issue is not appropriately before the Court here. Local Rule 230 requires that a party notice motions on the assigned motion calendar of the district or magistrate judge. Defendant has not appropriately noticed its request to bifurcate, which simply appears in its opposition brief. It is also premature at this stage. Accordingly, Defendant's request to bifurcate is DENIED WITHOUT PREJUDICE.

### III. CONCLUSION

Accordingly, based on the foregoing, IT IS ORDERED:

1. That Plaintiff's First Motion to Amend its Complaint is GRANTED, and Plaintiff is hereby granted leave to file its First Amended Complaint; and
2. Defendant's request to bifurcate trial in this matter is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: **July 24, 2019**            /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE