UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| rePLANET HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:19-cv-00133-LJO-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL<br><br>(ECF NO. 28) |

    Plaintiff rePlanet Holdings, Inc. ("Plaintiff") brings this suit against Defendant Federal Insurance Company ("Defendant") alleging causes of action under California law for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) fraud, stemming from Defendant's refusal to pay proceeds under a crime and fidelity insurance policy ("the Policy") that it issued to Plaintiff.

    Pending before the Court is Plaintiff's Motion to Compel in which Plaintiff seeks an order compelling Defendant to answer interrogatories and requests for production. (ECF No. 28.) The Court heard oral argument on the motion on September 27, 2019. Joshua Herr appeared telephonically for Plaintiff. Kenneth Watnick appeared telephonically for Defendant. For the reasons stated herein, and for those reasons stated on the record at oral argument, Plaintiff's

1

Motion to Compel is granted in part and denied in part.

I. **BACKGROUND**

Plaintiff's suit against Defendant stems from Defendant's refusal to pay insurance proceeds under a crime insurance policy that Defendant issued to Plaintiff. Plaintiff originally alleged this failure to pay was a breach of contract, as well as a breach of the covenant of good faith and fair dealing. Plaintiff filed suit in California state court on December 31, 2018, and Defendant removed the action to this Court on February 2, 2019. (ECF No. 1.)

On May 1, 2019, Plaintiff filed a motion to amend the Complaint to add a fraud claim and a factual allegation that Defendant systemically denies first-party claims under the Policy based on its interpretation of the "direct loss" language in the Policy. (ECF No. 12.) Defendant opposed the motion. (ECF No. 14.)

The Court granted the motion for leave to amend on July 25, 2019. (ECF No. 20.) The Court determined that an insurer makes a tacit representation when issuing an insurance policy that the policy provides some coverage, but, according to Plaintiff's allegations, the Policy that Defendant issued to Plaintiff was illusory and provided no coverage because of Defendant's interpretation of key language therein.[1]

On September 6, 2019, Plaintiff filed this motion to compel after an informal discovery dispute conference on August 9, 2019. (ECF Nos. 24, 28.) The parties filed their joint statement on September 20, 2019. (ECF No. 34.) Each side also filed declarations into the record in support of their positions. (ECF Nos. 30, 31, and 33.) The Court held oral argument on the motion on September 27, 2019.

II. **LEGAL STANDARDS**

Fed. R. Civ. P. 26(b)(1) defines the scope of permissible discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

---

[1] A complete discussion of the parties' arguments, as well as a recitation of the pertinent Policy language, can be found in the Court's Order granting leave to amend. (ECF No. 20.)

2

discovery outweighs its likely benefit.

Thus, to be discoverable under Fed. R. Civ. P. 26(b)(1), the information sought must be "(1) relevant to any party's claim or defense" and (2) "proportional to the needs of the case." To be relevant, the discovery must pertain to a claim, issue or defense that is pleaded in the case. *See Moore v. Superway Logistics, Inc.*, 17-cv-1480, 2019 WL 2285392 at *6 (E.D. Cal. May 29, 2019) ("Plaintiffs have not met their burden of establishing that the requested discovery is relevant to any claim or defense at issue in this case.").

Under the second part of the Fed. R. Civ. P. 26(b)(1) test, to be discoverable, information must be "proportional to the needs of the case." The 2015 amendments added the proportionality requirement for permissible discovery—relevancy alone is no longer enough. *Centeno v. City of Fresno*, 16-cv-00653-DAD-SAB, 2016 WL 7491634 at *3 (E.D. Cal. Dec. 29, 2016) ("Under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery, the discovery requested must also be proportional to the needs of the case.") (citation omitted).

Fed. R. Civ. P. 26(b)(2)(C) further restricts discovery. It requires the Court to limit the frequency or extent of discovery if the Court determines that the discovery sought (1) "[is] unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" and (3) "the proposed discovery is outside the scope of Rule 26(b)(1)." *See* Fed. R. Civ. P. 26(b)(2)(C).

**III.   ANALYSIS**

   **A. Requests related to other claims made under similar insurance policies**

The bulk of the parties' discovery dispute concerns Defendant's resolution of other claims brought under crime and fidelity policies like that issued to Plaintiff, particularly instances where Defendant denied such claims. The following contested interrogatories and requests for production seek information regarding other claims[2]:

> Special Interrogatory No. 5: "Identify the number of claims made under crime and fidelity policies in California SIMILAR to the POLICY in the last five years in which YOU

---

[2] Special interrogatories 4, 6, 8, and 10 are detailed in the parties' joint statement, but were apparently resolved by Defendant's supplemental response to the special interrogatories which detailed the number of claims under the pertinent Policy provisions.

3

denied coverage."

Special Interrogatory No. 7: "Identify the number of claims made under 'Forgery Coverage' provided in the POLICY in which YOU denied coverage."

Special Interrogatory No. 9: "Identify the number of claims made under 'Employee Theft Coverage' policies in California SIMILAR to the 'Employee Theft Coverage' provided in the POLICY in which YOU denied coverage."

Special Interrogatory No. 11: "Identify the number of claims made under 'Computer Fraud Coverage' policies in California SIMILAR to the 'Computer Fraud Coverage' provided in the POLICY in which YOU denied coverage."

Request for Production No. 3: "A copy of any settlement agreements YOU entered into in the past five years on policies YOU issued in California for coverage under 'Employee Theft Coverage' SIMILAR to the 'Employee Theft Coverage' provided in the POLICY."

Request for Production No. 4: "A copy of any settlement agreements YOU entered into in the past five years on policies YOU issued in California for coverage under 'Forgery Coverage' SIMILAR to the 'Forgery Coverage' provided in the POLICY."

Request for Production No. 5: "A copy of any settlement agreements YOU entered into in the past five years on policies YOU issued in California for coverage under 'Computer Fraud Coverage' SIMILAR to the 'Computer Fraud Coverage' provided in the POLICY."

On September 11, 2019, Defendant served supplemental responses to the interrogatories, which generally stated that "[Defendant] was placed on notice of 324 California claims involving Employee Theft, Forgery, or Computer Fraud Claims under crime policies similar to the rePlanet Policy, including 256 Employee Theft Claims, 21 Forgery Claims and 47 Computer Fraud Claims. [Defendant] confirmed it paid 112 of these claims, including 93 Employee Theft Claims, 3 Forgery Claims, and 15 Computer Fraud Claims." (ECF No. 34, p. 19-20.) Defendant contends that this is a sufficient response to the contested interrogatories given the allegation that it systemically denies crime insurance claims under policy provisions like that issued to Plaintiff. Anything further, such as a detailed review of all claims in which claims were not paid, would involve undue burden that outweighs any potential relevance the specifics of non-paid claims would have. As for the requests for production seeking settlement agreements, again, Defendant questions the relevance and proportionality of such requests, noting that "Plaintiff alleges, on information and belief, that [Defendant] denies all or substantially all crime claims. Thus it is the existence of paid claims, not the terms of any settlement agreement, which are arguably relevant to [Plaintiff's] allegations." (ECF No. 34, p. 23.)

In response, Plaintiff contends that information concerning denials of other claims is

4

pertinent to its fraud allegations because it alleges that "[Defendant] uses the 'direct loss' language in policies it issued with material terms identical or similar to those at issue in the Policy to deny all or the vast majority of first-party claims made in California." (*Id.* at p. 13). And, as to settlement agreements, Plaintiff argues that Defendant's "burdensome" objection is improper because it is based on Defendant's failure to keep its records in good order. *See Pom Wonderful LLC v. Coca-Cola Co.*, No. CV086237SJOFMOX, 2009 WL 10655335 at *3 (C.D. Cal. Nov. 30, 2009) (["Defendant] cannot seek to preclude plaintiff from pursuing discovery based on a record-keeping system that is plainly inadequate.").

The Court will deny the motion to compel as to special interrogatories 5, 7, 9, and 11 because denials of other claims have little if any relevance to the fraud claim the Court allowed Plaintiff to assert. As the Court understood the proposed claim, Plaintiff alleged that Defendant fraudulently issued an illusory insurance policy that, due to its construction of the phrase "direct loss," could *never* supply coverage. The Court found such allegations, upon information and belief, could state a fraud claim because an insurer makes a tacit representation upon issuing a policy that the policy covers something—an illusory policy providing no coverage would undermine that tacit representation. The Court did not, and does not, understand Plaintiff's fraud claim to be based on an improper pattern of denying some, or even most, claims made under similar crime and insurance policies. The Court's understanding that Plaintiff's fraud claim was premised upon a theory of an illusory insurance contract is bolstered by Plaintiff's representations at oral argument on the motion to amend, in which Plaintiff's counsel argued as follows:

> "This policy could never be interpreted to supply coverage…you're an insurance company you go into the market place, you make a representation that there's coverage. The casino chips, tokens, and tickets are provided are covered but you read the policy and coverage in such a way that there could never be coverage, that's fraudulent."
> 
> …
>
> "Here, we received from defendant after no investigation a policy denial based on the way the policy was written that as written would imply that there is never coverage, never ever ever ever!"[3]

---

[3] These quotations are taken from the Court recording of the May 31, 2019, hearing on Plaintiff's Motion to Amend; the recording is available to the parties upon request.

5

The Court determined that such allegations could state a fraud claim based on the tacit representation an insurer makes when it issues a policy, that the policy covers something. The Court found the allegations plausible and sufficient to state a claim, even though based on information and belief.

With this background in mind, Defendant's response to the interrogatories provides the most relevant information, i.e. whether Defendant denies all claims under these policy provisions. Specifically, Defendant's response delineates exactly how many claims under the Employee Theft, Computer Fraud, and Forgery provisions were paid. This response appears to negate Plaintiff's factual premise for the fraud claim to the extent that premise centers upon Defendant's issuance of an illusory insurance policy resulting in systemic denial of claims under the Employee Theft, Computer Fraud, and Forgery provisions of the Policy.

Thus, additional information about claim denials would have little relevance, and whatever relevance such information did have would be outweighed by the burden Defendant would face in ascertaining what claims were in fact denied. Indeed, while Plaintiff claims any burden to Defendant stems from the way in which it keeps its records, it cites no evidence of this; instead, Defendant submitted a detailed declaration from its Vice President of Fidelity Claims setting forth in detail the burden associated with analyzing the reasons for non-payment of the 212 California Claims for which there were no indemnity payments. (ECF No. 31, p. 2.) For these reasons, the Court finds the motion to compel as to interrogatories 5, 7, 9, and 11 should be denied.

Turning to requests for production 3, 4, and 5, the Court finds the sought information mostly irrelevant to the theory that Defendant fraudulently issued an illusory insurance policy. As Defendant notes, it is the existence of paid claims, not the terms of any settlement agreement, that are arguably relevant to Plaintiff's allegations. Finally, beyond the lack of relevance, the Court agrees with Defendant that the cost of compliance is not proportional to the needs of the case, as Defendant would have to review the 112 paid claims to determine which involved settlement agreements. And to the extent the settlement agreement contained a description of the claim or insured, Defendant would have to seek the affirmative consent of the insured and the third parties

before releasing such information. *See* Cal. Ins. Code § 791.13. Thus, the Court will also deny Plaintiff's motion to compel as to requests for production 3, 4, and 5.

At oral argument, Plaintiff's counsel suggested that additional detail regarding when proceeds *were* paid out under the pertinent policy provisions could be relevant. For example, if Defendant initially denied all claims and only reversed course after litigation or a settlement agreement, this would demonstrate that Defendant interprets the policy in such a way that it is rendered illusory. The Court does believe Plaintiff is entitled to discovering whether Defendant ever paid claims absent litigation. Specifically, the Court finds that determining whether at least some claims were paid before litigation or a settlement of some kind would be beneficial and relevant.

The Court thus orders the parties to meet and confer to determine how best to capture this information.[4] If the parties are unable to agree on supplemental discovery on this issue, they should seek the Court's assistance.

### B. Requests for production related to claims handling and training manuals

Plaintiff's Requests for Production 8 and 9 seek Defendant's claims handling and training materials, as follows:

> Request for Production No. 8: "All training materials YOU provided to YOUR claims handling professionals, including employees and independent contractors, RELATED TO the handling of claims made under crime and fidelity policies in California SIMILAR to the POLICY."
>
> Request for Production No. 9: "All claims handling manuals or related literature RELATED TO the handling of claims made under crime and fidelity policies in California SIMILAR to the POLICY."

Defendant produced the Financial Lines Fidelity Best Practices Guidelines and a certification conforming that its claims examiner obtained her California Fair Claims Practices Certification. Defendant's Vice President of Fidelity Claims also submitted a declaration that Defendant does not maintain training or claims manuals. Nevertheless, Plaintiff seeks a written response in Defendant's discovery responses confirming that the Financial Lines Fidelity Best

---

[4] The Court at oral argument discussed a potential Request for Admission as to each policy provision that no claims were paid before litigation.

7

Practices Guideline is the only document that is responsive to request for production number 8.

The Court grants this portion of the motion to compel. The Court orders Defendant to submit a supplemental response to request number 8 to indicate whether the Financial Lines Fidelity Best Practices Guidelines is the only document that is responsive to the request.

**C. Interrogatories concerning Defendant's reasons for denying the claim**

The parties initially disputed Defendant's response to interrogatories 1 and 2, which address why Defendant denied Plaintiff's claim. However, Defendant pointed Plaintiff to documents detailing the reasons it denied Plaintiff's claim, and Plaintiff indicated at oral argument that this response was sufficient. Accordingly, to the extent it relates to Plaintiff's interrogatories 1 and 2, Plaintiff's Motion to Compel will be denied as moot.

**D. Plaintiff's request for sanctions**

Plaintiff also seeks "over $7,500 in legal fees in connection with preparing its motion [to compel] and this joint statement," as well as the fees it incurred in attending and participating in oral argument. (ECF No. 16-17.) Plaintiff argues such a sanction is justified because Defendant's conduct has "unreasonably and vexatiously" multiplied these proceedings. *See* 28 U.S.C. § 1927. Plaintiff also points to Federal Rule of Civil Procedure 37(a)(5), which provides that if a motion to compel is granted, "the court must…require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless the moving party did not attempt to obtain the disclosure without court action, the opposing party's nondisclosure was substantially justified, or such an order would be unjust.

The Court declines to award sanctions here. The Court does not find that Defendant inappropriately multiplied these proceedings; indeed, many of its objections are justified. As for Plaintiff's request pursuant to Rule 37, where a motion to compel is granted in part and denied in part, the Court has discretion whether or not to apportion expenses incurred in relation to the motion. *See* Fed. R. Civ. P. 37(a)(4)(A). Here, the Court does not find sanctions are appropriate under Rule 37 because Plaintiff's Motion to Compel is largely denied.

\\\

## IV. CONCLUSION

For the reasons set forth herein IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Compel is DENIED AS MOOT to the extent it relates to Plaintiff's interrogatories 1, 2, 4, 5, 6, 8, and 10;
2. Plaintiff's Motion to Compel is DENIED to the extent it relates to Plaintiff's interrogatories 5, 7, 9, and 11;
3. Plaintiff's Motion to Compel is GRANTED to the extent it relates to Plaintiff's request for production number 8, and Defendant is directed to supplement its response consistent with this order;
4. Plaintiff's Motion to Compel is DENIED to the extent it seeks sanctions against Defendant; and
5. The parties shall meet and confer regarding supplemental discovery related to whether Defendant paid claims under crime insurance policies similar to the Policy issued to Plaintiff without litigation, as described in this order.

IT IS SO ORDERED.

Dated: **October 3, 2019**          /s/ Erin P. Groij
                                    UNITED STATES MAGISTRATE JUDGE