UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| rePLANET HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:19-cv-00133-NONE-EPG<br><br>ORDER RE: DEFENDANT'S MOTION TO COMPEL<br><br>(ECF NO. 48, 60) |

      Plaintiff rePlanet holdings, Inc. ("Plaintiff") brings this suit against Defendant Federal Insurance Company ("Defendant") alleging causes of action under California law for breach of contract, breach of the covenant of good faith and fair dealing, and fraud stemming from Defendant's refusal to pay insurance proceeds on Plaintiff's first-party insurance claims.

      Defendant previously filed a motion to compel seeking supplementation of certain interrogatory and request for production responses. In response to that motion, Plaintiff agreed to supplement its discovery responses by a Court-imposed deadline; Plaintiff missed the deadline, and Defendant now seeks preclusive and monetary sanctions. For the reasons that follow, Defendant's request for preclusion sanctions is denied; however, the Court will award Defendant attorney fees for its partial success on the motion to compel and time spent ensuring that Plaintiff met its supplementation responsibilities.

1

## I. BACKGROUND

### A. Plaintiff's Allegations

According to Plaintiff's Complaint, Plaintiff is a recycling company that allows customers to exchange their recyclables for vouchers. The vouchers can then be used as if they were cash at participating grocery stores. In July 2017, Plaintiff asserts that it discovered it had reimbursed grocery stores for recycling vouchers even though it did not receive the recyclables corresponding to the vouchers. Plaintiff asserts that, unbeknownst to it, third parties, including a Miles Heth, forged counterfeit rePlanet vouchers and entered the forged vouchers into commerce. Plaintiff alleges that one of its employees, Herman Granillo, stole printers on which rePlanet vouchers were created, the proprietary paper used to create the vouchers, and the computer equipment used to create the vouchers. Granillo then used this stolen equipment to create vouchers not backed by any recyclables remitted.

Plaintiff claims that it lost millions of dollars due to these criminal schemes. Plaintiff alleges that these losses were covered pursuant to an insurance policy issued by Defendant. Defendant, however, failed to pay insurance benefits, contending that Plaintiff's losses were not covered under the pertinent policy. Plaintiff subsequently brought this suit against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, and fraud.

### B. Defendant's Motion to Compel

A discovery dispute arose concerning a series of requests asking Plaintiff to identify and produce the alleged counterfeit vouchers underlying this suit, as well as evidence of payments Plaintiff made to grocers corresponding with the vouchers. After informal conferences on the subject, on November 8, 2019, Defendant filed a motion to compel responses to the following interrogatories and requests for production:

> DEFENDANT'S INTERROGATORY NO. 2:
> Identify each payment payments by YOU to one of YOUR grocery store partners for a stolen, counterfeit, and/or FORGED recycling voucher that YOU attribute to Herman Granillo.

> DEFENDANT'S INTERROGATORY NO. 3:
> Identify each payment by YOU to one of YOUR grocery store partners for a stolen, counterfeit, and/or FORGED recycling voucher that YOU attribute to Miles Heth.

2

> DEFENDANT'S INTERROGATORY NO. 4:
> Identify each stolen, FORGED, or counterfeit voucher that YOU attribute to Herman Granillo.
>
> DEFENDANT'S INTERROGATORY NO. 5:
> For each FORGED voucher that YOU attribute to Herman Granillo, identify the name of the RELANET attendant whose name was FORGED on the voucher.
>
> DEFENDANT'S INTERROGATORY NO. 6:
> Identify each stolen, FORGED, or counterfeit voucher that YOU attribute to Miles Heth.
>
> DEFENDANT'S INTERROGATORY NO. 7:
> For each FORGED voucher that YOU attribute to Miles Heth, identify the name of the REPLANET attendant whose name was FORGED on the voucher.
>
> DEFENDANT'S REQUEST FOR PRODUCTION NO. 5:
> All DOCUMENTS REFLECTING payments by YOU to any of YOUR grocery store partners for stolen or FORGED recycling vouchers during the period from January 1, 2012 to January 1, 2018.
>
> DEFENDANT'S REQUEST FOR PRODUCTION NO. 10:
> All DOCUMENTS that RELATE TO Miles Heth and/or others not employed by YOU FORGING the electronic signature of YOUR attendants on YOUR vouchers.
>
> DEFENDANT'S REQUEST FOR PRODUCTION NO. 22:
> All DOCUMENTS that RELATE TO Herman Granillo FORGING the electronic signature of YOUR attendants on YOUR vouchers.
>
> DEFENDANT'S REQUEST FOR PRODUCTION NO. 26:
> All of YOUR vouchers that contain a FORGERY during the period from January 1, 2012 to January 1, 2018.

The Court held a hearing on Defendant's motion to compel on November 15, 2019. Most of the argument centered upon whether Plaintiff had an obligation to identify and produce the entire universe of fraudulent vouchers attributable to Heth and Granillo. Plaintiff argued that such an exercise was overly burdensome and not proportionate to the needs of the case because it could prove its damages through expert testimony and sampling. Plaintiff further argued that it complied with its discovery obligations by producing some of the vouchers it "previously identified as counterfeit as well as a spreadsheet documenting all of the data rePlanet has on each counterfeit voucher, including the forged name thereon and the name of the rePlanet attendant who was actually working the day the counterfeit was printed." (ECF No. 48, p. 22.) As to the other vouchers, Plaintiff invoked Federal Rule of Civil Procedure 33(d), to argue that Defendant

could itself inspect the entire universe of vouchers to determine which were fraudulent.

The Court refused to accept this invocation of Rule 33(d) as satisfying Plaintiff's discovery obligations. Instead, the Court suggested that Plaintiff supplement its discovery responses to identify and produce all allegedly counterfeit vouchers that it intends to rely on as evidence, including those its expert would rely upon in creating a sampling methodology.

Plaintiff insisted that such a supplementation—though arduous—could be completed by January 10, 2020. The Court accordingly set January 10, 2020, as the deadline for Plaintiff to complete the supplementation and allowed for further briefing to address the adequacy of the supplementation. (ECF No. 50.)

As for those discovery requests relating to evidence of grocer payments associated with the fraudulent vouchers, Plaintiff claimed that there were no invoices corresponding to individual vouchers; instead, invoices were issued to Plaintiff from participating grocery stores periodically that encompassed both fraudulent and non-fraudulent vouchers. Plaintiff maintained that it already produced said invoices, labeled REPL015856-REPL021650 reflecting the amounts Plaintiff paid its grocery store partners. The Court ordered Plaintiff to supplement its discovery responses to clarify the lack of invoices associated with specific vouchers.

On January 9, 2020, Plaintiff filed an "Ex Parte Application for 10-Day Extension to Serve Supplemental Responses to Discovery." (ECF No. 53.) The Court granted the extension and Plaintiff was given until January 20, 2020, to supplement its discovery. (ECF No. 54.)

### C. FURTHER BRIEFING AND HEARING RELATED TO SUPPLEMENTATION

On January 31, 2020, Defendant filed a supplemental brief contending that Plaintiff's supplemental discovery responses served on January 20, 2020, "were incomplete, did not identify or produce all of the vouchers that it intends to reply on for its purported sampling analysis, and did not identify the grocer invoices that purportedly contain payments for the fraudulent vouchers at issue." (ECF No. 60, p. 1.) Defendant seeks preclusive sanctions preventing Plaintiff from utilizing any vouchers as evidence that were produced after January 20, 2020.

On February 8, 2020, Plaintiff filed a response to the supplemental briefing in which it

claimed that it diligently supplemented its discovery in accordance with the Court's order. (ECF No. 64.) By February 7, 2020, Plaintiff contended it had produced the allegedly fraudulent vouchers associated with Vons, Albertsons, Ralphs, and Stater Bros. Plaintiff represented that it would complete review of the last set of vouchers from Food4Less and serve them within "a matter of days." (*Id.* at p. 7.)

The Court held a further hearing regarding the supplementation on February 19, 2020. Plaintiff at that time represented that all vouchers it intended to rely upon as evidence were produced by February 14, 2020. However, Plaintiff also reserved the right to produce more allegedly fraudulent vouchers prior to the current discovery cut-off date of March 13, 2020.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 37 governs motions to compel. It provides, as follows:

(3) Specific Motions

    (B) To Compel a Discovery Response. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

        (iii) a party fails to answer an interrogatory submitted under Rule 33; or

        (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

(5) Payment of Expenses; Protective Orders

    (C) If the Motion is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expense for the motion. However, monetary sanctions are not appropriate if, (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust. *Id.* at 37(a)(A)(i-iii).

Rule 37 also addresses sanctions for failure to comply with a discovery order, as follows:

(2) Sanctions Sought in the District Where the Action is Pending.

    (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

5

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence.

*Id.* at 37(b)(2)(A)(ii).

However, before issuing sanctions precluding a party from introducing matters into evidence that will bear on the party's claims or defenses, the Court must consider the following factors, "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party [seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002). As the Ninth Circuit has stated in the context of sanctions under Rule 37, "[w]e have found the element of prejudice to be essential, stating that sanctions which interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (quoting *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)).

### III. WHETHER PRECLUSION SANCTIONS ARE WARRANTED

First, the Court addresses Defendant's argument that sanctions are warranted because Plaintiff has not provided "identification of each payment by rePlanet to a grocery store partner for a stolen, counterfeit, and/or forged recycling voucher that rePlanet attributes to Granillo…or Heth." (ECF No. 60, p. 6-7.) Plaintiff did supplement its discovery responses to indicate, as it represented at the November 15, 2019 hearing, that there are not individualized invoices or payments associated with specific fraudulent vouchers as Defendant appears to assume in its interrogatories and requests for production. Plaintiff asserts that it has provided all pertinent invoices to Defendant. The Court takes Plaintiff at its word that it has produced all responsive invoices. *See Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 14-mc-80095, 2014 WL 1477651, at *1 (N.D. Cal. Apr. 14, 2014) ("[T]he court cannot order production of documents that do not exist.").[1]

---

[1] The Court does not take any position as to whether Plaintiff may adequately prove its damages based on discovery produced. The Court's ruling only concerns whether Plaintiff is improperly withholding discovery.

6

As for the supplementation of the vouchers upon which Plaintiff will rely on as evidence to establish liability and damages in this matter, Plaintiff, by its own admission, failed to meet the January 20, 2020 deadline set for the completion of supplementation. It did not ask for another extension. Plaintiff now represents that it has completed supplementation. *See* (ECF No. 68.) Defendant, however, argues that the Court should preclude Plaintiff from introducing into evidence any vouchers produced after January 20, 2020 to support its case.

The Court finds the five-factor analysis set out above cuts against preclusion sanctions here. "Where a court order is violated, the first two factors [the public's interest in expeditious resolution of litigation and the court's need to manage its docket] support sanctions and the fourth factor [the public policy favoring disposition of cases on their merits] cuts against default. Therefore, it is the third [the risk of prejudice] and fifth [the availability of less drastic sanctions] factors that are dispositive." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

Here, Defendant claims it has been prejudiced by Plaintiff's untimely production because it has been seeking the subject discovery for nine months and, because of the quickly-approaching discovery cut-off, it will be unable to complete discovery on the tardy vouchers. But, as it indicated at the February 19, 2020, hearing, the Court will briefly extend the non-expert discovery cut-off if necessary to cure whatever prejudice results from the untimely production.[2] Additionally, as discussed below, less drastic sanctions in the form of monetary compensation are available. Accordingly, the Court finds that preclusion sanctions are not warranted.

### IV. DEFENDANT'S ATTORNEY FEES

Defendant seeks attorney fees in connection with the motion to compel and subsequent request for sanctions. Defendant specifically requests $6,693.00 in monetary sanctions, consisting of $5,000.00 for the original motion and $1,693.00 for the supplemental brief and time spent reviewing Plaintiff's supplemental voucher production.

As noted, Rule 37 allows for an award of monetary expenses when a motion to compel is granted and part and denied in part—as Defendant's was here. But an award of expenses is not

---

[2] Defendant also raised concerns about prejudice that might result from yet-to-occur voucher productions it anticipates Plaintiff will make at the eleventh hour. But, as ordered herein, Plaintiff is precluded from further supplementing the voucher production absent Court order.

7

automatic, and the Court has considerable discretion in this area. At oral argument, Plaintiff claimed that monetary sanctions are inappropriate here because Defendant failed to attempt in good faith to obtain the discovery without court action. The Court disagrees. For one thing, this is the first time Plaintiff has argued a failure to confer before filing a motion to compel; Plaintiff did not raise this argument in any of its briefs. Second, the argument is meritless: the record evidence suggests extensive meet and confer efforts took place before Defendant filed the motion to compel. *See* (ECF No. 48-1, Declaration of Ken Watnick).

Plaintiff also argued that its response to the discovery requests was substantially justified. The Court, again, disagrees. In response to discovery requests to identify and produce the allegedly fraudulent vouchers connected to Granillo and Heth, Plaintiff largely invoked Rule 33(d). But the Court has already determined that Plaintiff's invocation of Rule 33(d) under the circumstances could not substitute for specifically identifying and producing vouchers Plaintiff will rely upon to present and prove its case. In particular, the Court held that Plaintiff must produce any specifically identified vouchers it would use in expert opinion or at trial. Because Plaintiff wishes to rely upon a sampling of vouchers, it was not substantially justified in failing to identify the allegedly fraudulent vouchers revealed in the sample. Thus, Plaintiff's responses were not "substantially justified." The Court will award attorney fees accordingly.

Reasonable attorney fees are generally calculated based on the traditional "lodestar" method. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Under the lodestar method, the Court determines a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *See Hensey v. Eckerhart*, 461 U.S. 424, 433 (1983). In fixing a reasonable fee award, the most critical figure is the degree of success that the prevailing party obtained. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Thus, the court may reduce the fees awarded when a movant is only partially successful. *See Generally Clark v. Capital Credit & Collection Services, Inc.*, 561 F.Supp.2d 1213, 1218 (D. Or. 2008). "There is no precise method for determining the amount of attorney's fees that a partially successful plaintiff should recover." *Id.* (citing *Hensley*, 461 U.S. at 436). "A district court may attempt to determine particular hours that should be eliminated from the lodestar calculation for

claims upon which the plaintiff was unsuccessful, 'or may simply reduce the award to account for the limited success.'" *Id.* (quoting *Hensley*, 461 U.S. at 436-37).

Here, Defendant seeks $5,000 for the November 8, 2019 motion to compel. Defendant's counsel submitted a declaration in support of the fee request in which he states that his hourly rate is $295.00. The time spent on the motion is broken down as follows:

- 8 hours preparing the motion to compel;
- 1 hour preparing for the hearing on the motion to compel;
- 3 hours traveling to and from Plaintiff's Ontario facility and 1 hour examining vouchers at said facility;
- 4 hours on repeated meet and confer efforts related to the motion; and
- 3 hours identifying and reviewing the "purported vouchers that were identified in rePlanet's supplemental interrogatory responses." (ECF No. 48-1, p. 4.)

Defendant also seeks $1,693.00 related to the filing of the January 31, 2020 supplemental brief. Defendant's counsel claims that he spent in excess of four hours preparing the supplemental brief, reviewing the further supplemental responses, and the documents produced to date. Defendant's counsel's paralegal spent 3.8 hours reviewing and organizing the additional vouchers that Plaintiff produced. The paralegal's hourly rate is $135.00 an hour.

Initially, the Court finds that Defendant's counsel's rate is reasonable. When calculating the lodestar amount, the Court looks to the "prevailing rates in the relevant community"—in this case the Eastern District of California. *Blum v. Stenson*, 465 U.S. 886, 895-96 & n. 11 (1984). Two-hundred ninety-five dollars ($295.00) per hour is within the range of rates this Court has found to be acceptable. *See Generally E. & J. Gallo Winery v. Strategic Materials, Inc.*, No. 17-cv-01709, 2019 WL 672766 at *4 (E.D. Cal. Dec. 11, 2019) (surveying reasonable rates within the Eastern District of California and determining that such rates, depending on attorney experience, could range from $200.00 an hour to $450.00 an hour).

As for hours reasonably expended, the Court finds that 8 hours to prepare the underlying motion to compel is excessive. The Court will award 4 hours for preparing the motion to compel. And although the Court encourages meet and confer efforts, attorney fees for 4 hours of such

efforts is excessive. The Court will award 1 hour for meet and confer efforts. Finally, the Court does not award any hours for time Defendant's counsel or paralegal spent reviewing vouchers produced, as this task would have to be completed regardless of the motion to compel.

With these reductions, the Court finds that Defendant's counsel reasonably expended eleven hours related to the motion to compel, including the supplemental brief.[3] At a rate of $295.00 per hour, the lodestar amount is $3,245.00. But because the motion to compel was not entirely successful—that is, because Plaintiff was not ordered to produce the entire universe of fraudulent vouchers—the Court will reduce the lodestar figure by 50%. Accordingly, Defendant is owed $1,622.50 for its partially successful motion to compel, which includes those expenses incurred in litigating the original motion, as well as the supplemental brief related to enforcing the Court's order regarding that motion.

**V.     CONCLUSION**

Accordingly, for the reasons set forth herein, IT IS ORDERED that:

1. Defendant's request for sanctions to preclude the introduction of the allegedly fraudulent vouchers produced and identified after January 20, 2020, is DENIED;

2. To the extent Defendant seeks an order compelling further response to interrogatories numbers 2 and 3 or request for production number 5, the request is DENIED;

3. Absent Court order, Plaintiff is precluded from further supplementing its identification and production of the allegedly fraudulent vouchers it intends to rely on as evidence in this matter; and

\\\
\\\
\\\
\\\
\\\

---

[3] Defendant's counsel states that he spent in excess of four hours related to the supplemental brief, which included time reviewing "further supplemental discovery responses and the documents produced to date." (ECF No. 60-1, p. 2.) As noted, the Court will not award fees for time Defendant's counsel spent reviewing discovery responses and documents that would need to be reviewed regardless. Because Defendant's counsel does not specifically state how much time was spent drafting the supplemental brief, the Court will award 2 hours for same.

4. Defendant is hereby awarded $1,622.50 in attorney fees in connection to the partially-successful motion to compel (ECF No. 48) and supplemental briefing (ECF No. 60) related to enforcing the Court's order on that motion.

IT IS SO ORDERED.

Dated: __**March 4, 2020**__  /s/ *Eric P. Gross*
UNITED STATES MAGISTRATE JUDGE